Smith, J.
We state very briefly the conclusions at which we have arrived in these cases. And first, as to the strip of 16-| feet of ground between the Tytus Mill and the Jacoby Mill.
*119 It is manifest that the legal title to this strip, is, and for many years has been, in the Hydraulic Co. That when th® land on which the Tytus Mill is now situate, was conveyed by the Hydraulic Co. to the grantors of the Tytus-Gardnér Paper Co., this strip was owned by the Hydraulic Co., and was not conveyed by said deed, but was expressly excepted therefrom, and there was no language in the deed which called for it as an alley or roadway, or in any way indicated that the strip was to be so used, or that any interest whatever therein, was conveyed by the Hydraulic Co. to tire grantees in the deed. The grantees therefore, took no interest in it under such deed. No evidence was received or heard by the court, of any contract or arrangement between the Hydraulic Co. and the Tytus-Gardner Paper Co., or its predecessors in title, which gave them any right thereto, or any easement therein, or right of way over the same. Nor was there any evidence which shows that an easement therein, or a right of way over the same, has been gained by prescription. It is true, that for some years before the sale of the land to plaintiffs’ grantors, and while the property was owned by the Hydraulic Co., there was some vacant ground belonging to the Company, and of which this strip was a part, over which persons desiring it were allowed fo cross to reach the alley east of it; but this was not a well defined way,and not particularly over this strip,and such uses did not continue for twenty-one years, so as to ripen into 'a right. Judges Swing and Smith, therefore, with great reluctance, are compelled to hold, that the plaintiffs have not maintained their claim as to this strip, and are not entitled to the relief sought as to this. I say with reluctance, because we are satisfied that this strip was; in fact, reserved by the Company, intending that it might be used by the Jacoby Co., whose mills on the north side of the strip, came to the north line thereof, and by the grantees of the Company on the south side *120 thereof — both being customers of the Hydraulic Co., and purchasing water rights therefrom. We think that it would be very inequitable and unjustifiable, if the Hydraulic Co., for no good reason, and without any prospect or advantage to itself, should insist on closing up this way. But we see no legal method to prevent them from so doing if they see proper to do it. Judge Cox is of the opinion that the plaintiffs are entitled to this strip as an easement, or to a right of way on it, and favors granting the relief prayed for.
2nd: — As to the bridge: We agree that under all the circumstances of the case, the bridge having been put there with the full concurrence, and perhaps with the assistance of the Hydraulic Co., and having been used asa bridge for more than twenty-one years, the right to have the same remain, has been acquired by the plaintiffs, and that the Hydraulic Co. has no right to remove it.
3rd: — As to the platform. This question presents greater difficulty. It is clear that the right to place it there, in the shape in which it now stands, was granted for a valuable money consideration to the grantors of the Tytus-Gardner Paper Co., and that a consideration was paid to the Hydraulic Co. therefor, and that it was constructed at a large expense, and was continued there without any objection on the part of the Hydraulic Co.,from 1883 or 1884, until shortly before the bringing of this suit in March, 1895. The platform was’so erected under the direction of the Hydraulic Co.,extending about sixteen feet from the west bank of the Hydraulic canal, extending for that distance over the canal, and-about — feet in length — it is supported by seven posts, each,say,one foot in diameter. We find that in no material or essential way, does it interfere with the use of the canal. This canal, at that point, is located along one of the streets of the city of Middletown, and the right to place it there,on certain conditions and under certain restrictions, was *121 given to the Hydraulic Co. by the city of Middletown. Subject to this grant, the city is the owner of the street as it is of the other streets. No objection is made by the city to the platform as it exists.
Under this state of fact, has the Hydraulic Co., against the will of The Tytus-Gardner Paper Co., the right to remove this platform?
It would seem that the right to place it there was founded upon a license to do so, given by the Hydraulic Co. to the grantors of the Tytus-Gardner Paper Co., and not to the Paper Co. itself. As stated in yol. 13, Am. & Eng. Ency. of Law, 539, “License, as a term of real estate law, is an authority to do a particular act or series of acts, upon another’s land without possessing any estate therein. It is distinguished from an easement in the fact, that the latter always implies an interest in the land upon which it is imposed.” And on page 545, it is said. “A license is strictly confined to the original parties. It is purely a personal privilege, and unless coupled with an interest, is not assignable, and can operate neither for, nor against a third person. ”
The doctrine stated as to the non-assignability of a license, is the most troublesome question the Paper Co. has to meet as to this point. For while it is also the general principle that a parol license may be revoked by the licensor at will, yet, this is not universally the case. For instance, in our own state, it has been held (Wilson v. Chalfant, 15 Ohio, 248):
“1st. If one enter upon the land of another by virtue of a parol license, given for a consideration paid, and erects fixtures, trespass will lie against the owner of the land for destroying them.
“2nd. A parol license executed is irrevocable; and
“3rd. A license to erect fixtures upon the land of another, executed, gives the right of possession to control, repair and protect the fixtures against the owner ofthe fee.”
*122 In the decision rendered by the court, it is said:
“On this subject the decisions óf judicial tribunals of our sister states differ. (Citing cases.) But in Ohio, we think it can, at this day, be hardly considered as an open question. Part performance of parol contracts, especially where the non-execution would operate as a fraud on the rights of the vendor, have repeatedly been enforced in' equity, and a parol license executed has been held to be irrevocable in numerous instances upon the circuit, at law. ’ ’
And in 20 Ohio St., 89, Judge Welch, in deciding the case of Hornback v. R. R. Co.,says: “The contract is at least a parol license, and that license has been fully executed, with the knowledge and consent of the plaintiff, who has received the full price stipulated therefor.” We see nothing in the decisions of that court subsequently changing the law as stated in 15 Ohio Reports.
As has been said, there is more reason to believe that the Paper Oo. is not in a position to avail itself of a license granted to its predecessor in the ownership of the property, for the benefit of whom the license was granted. And yet, as the license was evidently intended for the benefit of the property then owned by the license, and now by the Paper Oo., and was not intended for the personal use of the licensees, there is a strong element of justice in the claim that the Hydraulic Oo. having received a pecuniary compensation for the license, ought not now, without just cause, be allowed to destroy the improvement so constructed with its full consent, and with the same necessity for its use still existing. If circumstances should hereafter arise, which would show that its continued existence was to the substantial injúry of the Hydraulic Oo., we do not say that the Company, on proper terms, might not be allowed to remove it. But as the ease stands, we do not deem it equitable to require it to be done, on the showing made; but think it should be allowed to remain and the Hydraulic Oo. be enjoined from removing it.
Morey, Andrews & Morey, and J, J. Muir, for the Hydraulic Oo.
Thos. Milliken & Ben Harwitz, for The Tytus-Gardner Paper Co,
Another question arises in one or the other of these cases, as to the right of the Paper Oo. to use the water from the hydraulic, after it is measured and delivered to it, for any other purpose than the turning of the wheels of the mill. That is, whether it may be used in the boilers which have been put into the mill of the Paper Co.,to be converted into steam to turn other machinery. We are of the opinion that it has such right, except as stipulated íd the lease, that is that it can not be used for flouring mill purposes. That the water being measured to them, and paid for, it may nowr be used for the purpose indicated. There was to be and could be no further use of the water after it left the mills of the Paper Co,, but it then flowed directly into the Miami river, and was of no possible use to the Hydraulic Co,
The other questions made, as we understand, are not now in controversy. It being conceded that some use of the water was made by the Paper Co., which it was not entitled to use in that way, which use has ceased, and the question as to the disposition of the costs made in the second case, is all that remains. In view of all the circumstances of the case, we have arrived at the conclusion, that in each of the two cases, the plaintiffs should pay the one half of all the costs, and the Hydraulic Co, the other one half.